852 So.2d 358 (2003)
CITY OF COCOA BEACH, Appellant,
v.
VACATION BEACH, INC., et al., Appellee.
No. 5D02-2722.
District Court of Appeal of Florida, Fifth District.
August 15, 2003.
Mary L. Sneed and James A. Fowler, of Fowler and O'Quinn, P.A., Orlando, for Appellant, City of Cocoa Beach.
William H. Cantwell, II, and Michael R. Riemenschneider, of O'Brien Riemenschneider, P.A., Melbourne, for Appellee.
*359 TORPY, J.
Appellant ("City") challenges a summary judgment that invalidated two amendments to its charter concerning density and height restrictions on development. We reverse.
In August of 2001, pursuant to section 166.031, Florida Statutes (2001), citizens of City initiated petitions to amend its charter in two respects. The first proposed amendment, to Section 6.01 of the charter, would limit residential density to ten (10) dwelling units per acre and transient lodging (hotels and motels) to twenty-eight (28) units per acre. This amendment, exclusive of provisions allowing for variances under specified conditions, is as follows:
Sec. 6.01. Residential Density Limits.
No part of the City of Cocoa Beach shall be zoned to a residential density greater than ten (10) dwelling units per acre for permanent occupancy dwellings, or twenty-eight (28) units per acre for transient lodging establishments (hotels and motels). Buildings in existence, or with an approved construction permit on or before July 19, 2001, may be repaired or rebuilt to a habitable density equivalent to the previously existing density.
* * *
Those parts of any ordinances in conflict with this section are hereby repealed.
(Emphasis added).
The second proposed amendment, to section 6.04, would establish building height limits of forty-five (45) feet. Its material provisions are as follows:
Sec. 6.04. Building Height Limit.
No structure, no part of any structure, and no attachment to any structure shall be erected to a height greater than forty-five (45) feet above the grade of the building site. Buildings in existence, or with approved construction permit on or before July 19, 2001, may be repaired or rebuilt to a height not to exceed the previously existing habitable height.
* * *
Those parts of any ordinances in conflict with this section are hereby repealed.
(Emphasis added).
After the procedures were followed, the two proposals were placed on the ballot, and they passed by a substantial margin. Prior to the election, however, Appellee initiated this action seeking to enjoin the enforcement of the proposed amendments. On November 1, 2001, five days before the election, the lower court issued a temporary injunction allowing the election to proceed but enjoining enforcement of the amendments until further order of the court. Thereafter, cross-motions for summary judgment were filed and the lower court granted Appellee's motion and denied City's motion.
The sole issue presented in this appeal is whether the charter amendments comply with the provisions of Florida's Growth Management Act, specifically section 163.3194(2), Florida Statutes (2001), which provides in pertinent part as follows:
163.3194. Legal status of comprehensive plan.
* * *
(2) After a comprehensive plan for the area, or element or portion thereof, is adopted by the governing body, no land development regulation, land development code, or amendment thereto shall be adopted by the governing body until such regulation, code or amendment has been referred either to the local planning agency or to a separate land development *360 regulation commission created pursuant to local ordinance, or to both, for review and recommendation as to the relationship of such proposal to the adopted comprehensive plan, or element or portion thereof. Said recommendation shall be made within a reasonable time, but no later than within 2 months after the time of reference. If a recommendation is not made within the time provided, then the governing body may act on the adoption.
(Emphasis added).
Appellee argues that, before these charter amendments could be placed on the ballot, City was required to submit them to the local planning agency for review and, if they were determined to be inconsistent with the comprehensive plan, the plan had to be amended before the charter could be amended. City acknowledges that the amendments were not submitted to the local planning agency for review, but urges that, because the amendments are to the charter, and not to any "land development regulation," they are not subject to section 163.3194(2). Alternatively, City argues that because the charter amendments were not "adopted by the governing body," the statute is not implicated.
City is correct that neither charter amendment is a "land development regulation," which is defined as "an ordinance enacted by a local governing body ...." § 163.3213(2)(b), Fla. Stat. (2001). An "ordinance" is legislative action of the governing body. § 166.041(1)(a), Fla. Stat. (2001); City of Miami v. Rosen, 151 Fla. 677, 10 So.2d 307 (1942). "Governing body" in this case is the city council. § 163.3164(9), Fla. Stat. (2001).
Our inquiry does not end here, however, because section 163.3194(2) also applies to amendments to land development regulations. Here, both charter amendments state as follows: "Those parts of any ordinances in conflict with this section are hereby repealed." (emphasis added). The effect of this sentence is that it immediately repeals zoning ordinances that permit greater heights and densities. These affected ordinances are by definition "land development regulations." By "repealing" the ordinances, the revised charter "amends" them. See Wilson v. Crews, 160 Fla. 169, 34 So.2d 114 (1948) ("amendment" of constitution repeals or modifies provisions in the constitution that are inconsistent with the amendment). Having so concluded, we must next address City's alternative argument, that the charter amendments were not "adopted by the governing body."
Appellee acknowledges that the phrase "governing body" refers to the city council. § 163.3164(9), Fla. Stat. (2001). Appellee urges, nevertheless, that because the city code provides that any charter amendment, whether initiated by the voters or the council, must be "adopted" by the council, the enactment of the amendments through referendum is tantamount to "adoption" by the council. We disagree that the city code should be construed in this manner. City code section 9.01(c), provides as follows:

Results of referendum. If a majority of the qualified voters voting in a referendum on a proposed charter amendment vote in its favor, it shall be considered adopted upon certification of the election results and shall be treated in all respects in the same manner as other sections of the charter.

(italics in original; underline added). This code provision does nothing other than acknowledge what section 166.031(2) already providesthat adoption of the proposed amendments is achieved through a certified, majority vote of the people. The *361 council's function at that point, under both the statute and city code, is purely ministerial. Indeed, to suggest that the council's involvement is tantamount to "adoption" ignores the fact that section 166.031(1) reserves to the people the right to amend City's charter without approval ofand even in the face of vehement objection fromthe governing body. Thus, we conclude that, because these amendments to the land development regulations were not "adopted by the governing body," the lower court erred in concluding that section 163.3194(2) had been violated.
We emphasize that our decision today addresses a very specific issue. We hold that the charter amendments are not invalid under section 163.3194(2). Our holding should not be construed as a declaration that these charter amendments are valid. Arguments advanced below attacking their validity on various grounds were not addressed by the lower court, nor argued on appeal; therefore, we leave their resolution to the trial court on remand.[1]
REVERSED and REMANDED.
PALMER, J., concurs.
THOMPSON, J., concurs in result only.
NOTES
[1] For example, we have not addressed the validity of the charter amendments under section 163.3194(1)(b) of the Growth Management Act, which prohibits amendments to "land development regulations," if such amendments are inconsistent with the comprehensive plan. We note parenthetically that this subsection seems to apply irrespective of by whom the amendments are adopted.