876 So.2d 719 (2004)
CITY OF COCOA BEACH, Appellant,
v.
VACATION BEACH, INC., et al, Appellees.
No. 5D03-2355.
District Court of Appeal of Florida, Fifth District.
July 2, 2004.
James A. Fowler and Jamie E. Seaman, of Fowler & O'Quinn, Orlando, for Appellant.
No Appearance for Appellees.
GRIFFIN, J.
This is the appeal of an order imposing contempt sanctions against the City of Cocoa Beach. It arose out of a lawsuit commenced on October 16, 2001, by the plaintiff below, Vacation Beach, Inc. ["Vacation Beach"]. Vacation Beach filed a complaint for declaratory judgment and injunctive relief against defendants below, City of Cocoa Beach ["the City"], Fred D. Galey in his capacity as Brevard County Supervisor *720 of Elections, and Paul Fernald.[1] As a property owner, Vacation Beach challenged a voter-initiated referendum to be placed on the ballot for the November 6, 2001, election, which would change the maximum building height and density. Vacation Beach sought a declaratory judgment declaring the referendum void ab initio and removing it from the ballot. One of the challenges to the proposed amendments was that they had not been submitted to the planning board before being placed on the ballot. The City filed an answer to the complaint and a motion to strike on November 1, 2001.
That same day, a hearing was held in the circuit court. The parties entered into a written stipulation before the hearing, agreeing to referendum ballot language;[2] agreeing that the density and height changes in the referendum had not been submitted to the planning board for study or recommendation; and that the planning board had not completed any study, prepared any report or made any recommendations regarding the density and height changes in the referendum. The City noted it was stipulating "without agreeing to either relevance or materiality of the facts." At the close of the hearing, the parties agreed to allow the election to proceed with the challenged referendum on the ballot, but to stay the enforcement of the referendum if it passed, pending a final hearing on the merits of the lawsuit. The exact language stipulated to was that the parties "would agree to stay enforcement of the charter amendment pending final hearing."
On November 8, 2001  nunc pro tunc to November 1, 2001  the court entered an order granting temporary injunction. The order stated, "Should the referendum contained in the November 6, 2001, election pass, by the required affirmative votes, pursuant to the stipulation of the parties, [the City] is enjoined from enforcing the proposed Charter Amendments contained therein and shall not enforce them until further Order of this Court." On November 6, 2001, the referenda were approved by the voters.
On April 3, 2002, Vacation Beach filed a motion for contempt of the injunction entered November 1, 2001. The motion alleged in part:
1. On November 7, 2001, this Court entered an Order Granting Temporary Injunction nunc pro tunc to November 1, 2001, enjoining the [City] from enforcing the referendum that is the subject of this action.

*721 2. After the November 1, 2001, hearing, at the City's November 15, 2001, City Commission meeting, the City initiated procedures for the implementation of a Moratorium halting the issuance of building permits.
3. On December 20, 2001, the City passed a moratorium on the issuance of any building permits in the City. The City's enactment of the Moratorium is clearly a back-handed attempt to enforce the [height and density] restrictions set forth in the referendum, directly in violation of this Court's injunction.
4. From a review of the official records of the City, specifically the minutes from the City Commission meetings and Planning Board Meetings, it is clear that the purpose behind the passage of the Moratorium was specifically to allow the City to enforce the height and density limitations set forth in the referendum, despite this Court's Order Granting Temporary Injunction.
* * *
6. As listed in the Moratorium, Ordinance No. 1325, there are numerous exemptions to its enforcement. The City has put up the appearance that there is a moratorium as to building in the City, but the exemptions have watered the Moratorium down so extensively that the only real applicability that remains, is to height and density.
The minutes of the meetings referenced in the motion were attached.[3]
*722 On April 19, 2002, the City filed a motion to set aside the injunction "which was agreed to by the parties herein at hearing on November 7, 2001." The City alleged as grounds:
1. The above-referenced Injunction, staying the implementation of the referendum passed by the citizens of the City of Cocoa Beach, Florida, was entered pursuant to an agreement by the parties to such a stay.
2. The trial on these matters which was to be held on April 15, 2002, has been continued over the objection of [the City].[4]
3. As a consequence of the continuation, the City no longer consents to the temporary stay, absent a hearing on the matter and a determination by the Court that such a stay was prudent and proper under the circumstances.
It appears, however, that the City never set the motions to lift the temporary injunction for a hearing.
After the contempt hearing held on June 14, 2002, the court granted Vacation Beach's motion and found that the City was in contempt of its order granting temporary injunction. The court's order is detailed and includes a finding that "the enactment of the moratorium was nothing more than a thinly veiled attempt by the City to enforce the restrictions contained in the enjoined amendments." The court said: "While this Court agrees with the proposition cited by the City that legislative ordinances are not the subject of judicial inquiry generally, none of the cases cited by the City address the situation where the legislative action is taken for the specific intent to thwart the terms of a court ordered injunction." The court found "the City is not free to ignore its obligations under the law and its obligations under its own agreement and under this Court's order. It cannot do indirectly that which it had agreed and was ordered not to do directly." The court then reserved ruling on the imposition of sanctions pending a further hearing.
On July 18, 2002, the trial court entered an order on the cross motions for summary judgment on the declaratory judgment complaint, granting Vacation Beach's motion and denying the City's motion.[5] The lower court invalidated the amendments on the ground that they violated section 163.3194(2), Florida Statutes, requiring amendments to land use regulations to be referred to the local planning *723 board prior to adoption by the governing body. On August 20, 2002, the City appealed the order on cross motions for summary judgment to this court. In City of Cocoa Beach v. Vacation Beach, Inc., 852 So.2d 358 (Fla. 5th DCA 2003), this court reversed and remanded. This court held that the charter amendments were not invalid under section 163.3194(2), but remanded because there were other grounds asserted below which were not addressed in the lower court's order nor on appeal which would have to be resolved on remand. Id. at 361.
On September 3, 2002, Vacation Beach filed an emergency motion to hold the City in contempt of court. Vacation Beach alleged that the City disregarded the court's July 18 contempt order by voting to extend the duration of the moratorium for ninety days and expanding the area subject to the moratorium.
After a hearing on October 30, 2002  on both the imposition of sanctions pursuant to the court's order of July 18, 2002, finding the City in contempt, and on Vacation Beach's emergency motion seeking an order from the court finding the City in contempt for a second time  the lower court filed an order imposing contempt sanctions against the City. The court ruled that the moratorium and the extension of the moratorium were violations of the court's July 18, 2002, temporary injunction order, declared both void ab initio, and stated, "Henceforth, in its review of any applications, plans or permits, the City shall not reference any height and/or density limitations or restrictions that were not in effect on October 31, 2001, until further order of the Court." The court also imposed the following sanctions: (1) the City shall extend Vacation Beach's site plan for a period of ten months; (2) the City shall pay Vacation Beach's attorney's fees in the amount of $9,000 and costs in the amount of $2,400; and (3) the City shall pay a fine of $250,000 for its repeated willful disregard of the court's orders. This is the order on appeal.
Like the trial court, we are somewhat puzzled by the City's position below and on appeal. Rather than address the issue of whether the City actually violated the injunction by enacting the moratorium, the City has launched off into an attack on the trial court and what it calls its "egregious" violation of the constitution by "controlling" the City's legislation in violation of the separation of powers. Reading the City's brief as broadly as we can, however, we can divine an argument that the agreement of the parties, and the injunction based on that agreement, pertained only to the charter amendments approved pursuant to the challenged referendum and did not by its terms restrict the City's ability to enact similar limitations by other methods available to the City's commission. Because we agree with this proposition, we are bound to reverse the appealed order.
Vacation Beach did not challenge the moratorium as being beyond the power of the commission to enact; only that the City was prevented from enacting a moratorium that had the same purpose and effect as the referendum measure whose validity was in litigation and which was the subject of the injunction. We agree with the City that it was not so constrained. To say that the City could not do indirectly what it could not do directly does not solve the question whether the City could do something different but within its power that had the same purpose or effect as the referendum. If the City had the power to issue the moratorium before the referendum litigation and the injunction, nothing we can see prevented them from taking those same measures thereafter. The City did not agree to forebear height and density requirements or to place a moratorium *724 on building. Even if the City intended its moratorium to show contempt of the court's injunction, it did not because the moratorium was not within the injunction. The City merely agreed to stay enforcement of the charter amendments. The contempt order is vacated.
ORDER VACATED.
SAWAYA, C.J., and SHARP, W., J., concur.
NOTES
[1] The City is the only defendant involved on appeal.
[2] Section 6.01, the proposed amendment on the ballot pertaining to residential density, provided:

No part of the City of Cocoa Beach shall be zoned to a residential density greater than ten (10) dwelling units per acre for permanent occupancy dwellings, or twenty-eight (28) units per acre for transient lodging establishments (hotels and motels). Buildings in existence, or with an approved construction permit on or before July 19, 2001, may be repaired or rebuilt to a habitable density equivalent to the previously existing density.... Those parts of any ordinances in conflict with this section are hereby repealed.
Section 6.04, the second proposed amendment on the ballot, pertained to building height limit and provided:
No structure, no part of any structure, and no attachment to any structure shall be erected to a height greater than forty-five (45) feet above the grade of the building site. Buildings in existence, or with approved construction permit on or before July 19, 2001, may be repaired or rebuilt to a height not to exceed the previously existing habitable height.... Those parts of any ordinances in conflict with this section are hereby repealed.
[3] The moratorium  Ordinance No. 1325  was also attached and provided:

SECTION 3. Moratorium Imposed.
(a) Moratorium in effect. A moratorium is hereby effectuated in the area described in Section 2 of this Ordinance. Except as provided in Section 3. (b) of this Ordinance, no application or petition for a comprehensive plan amendment pursuant to Section 163.187, Florida Statutes, as amended, Land Development Regulation proposals or amendments, Development Permits, including, but not limited to, a rezoning or change in zoning district boundaries, special exception, site plan approval, building permit, Development of Regional Impact Application for Development Approval, Florida Quality Development, variance, plat or subdivision approval, shall be accepted, processed, or considered by the City during the time period that the moratorium is in effect.
(b) Exemptions. The following proposals to amend the Comprehensive Plan or the Land Development Regulations, Development Permits, and applications for Development Permits, shall be exempt from the provisions of this Ordinance:
(1) Amendment to the Comprehensive Plan proposed by the City to implement the Evaluation and Appraisal Report ("EAR") pursuant to Section 163.3191, Florida Statutes;
(2) Site plan application for the purpose of repair, rehabilitation or expansion of an existing structure; provided, that any expansion of an existing structure shall not exceed ten percent (10%) of the gross floor area of an existing structure shall not be exempt from the moratorium provided for by this Ordinance;
(3) Building Permit or other Development Permit issued pursuant to the City of Cocoa Beach Code for the purpose of repair, rehabilitation or expansion of an existing structure; provided, that any expansion of an existing structure shall not exceed ten percent (10%) of the gross floor area of the structure as said gross floor area exists on the effective date of this Ordinance. Any building permit application or approval providing for the demolition and reconstruction during the term of this moratorium cumulatively amounting to more than ten percent (10%) of the gross floor areas of an existing structure shall not be exempt from the moratorium provided for by this Ordinance;
(4) Variance for other than height or density except for density variances processed in accordance with the requirement of City Charter Section 6.01;
(5) Development Order relating to concurrency;
(6) Development Permit or variance issued for Flood Protection, Coastal Construction Code, or Coastal Setback;
(7) Development Permit or variance issued for Landscaping and Trees;
(8) Development Permit or variance issued for Stormwater Management;
(9) Any Comprehensive Plan amendment or Land Development Regulation proposed by the City and affecting substantially all of the City provided that such amendment does not allow for residential density greater than ten (10) dwelling units per acre for one-family, two-family, or multiple-family dwellings, or transient accommodation density greater than twenty-eight (28) units per acre for transient lodging establishments or hotels and/or motels, and/or provide or allow structures, including parts and attachments, that would be greater than forty-five (45) feet above crown of road;
(10) Vested rights special permit;
(11) Construction, repair, or rebuilding or structures in existence or with approved construction permit obtained on or before November 15, 2001;
[4] Vacation Beach filed a motion for continuance on April 1, 2002. The City filed a response in opposition to Vacation Beach's motion for continuance on April 5, 2002. On April 15, 2002, the court entered an order to continue the trial. The trial date was moved to the June 10, 2002, docket.
[5] Vacation Beach filed a motion for summary final judgment on April 4, 2002. On April 23, 2002, the City filed a response in opposition to Vacation Beach's motion for summary final judgment and a cross motion for summary final judgment.